UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KABIR ELOHIM ISREAL,

                Plaintiff,

v.

AILEENE CHOVANCE, HECTOR CLAUDIO, GUY FRALEY, and KENTON BURTCH,

                Defendants.

Case No. 24-CV-18-JPS

**ORDER**

### 1.    INTRODUCTION

On January 4, 2024, Plaintiff Kabir Elohim Isreal ("Plaintiff"), proceeding pro se, filed this action alleging that Defendants Aileene Chovance ("Chovance"), Hector Claudio ("Claudio"), Guy Fraley ("Fraley"), and Kenton Burtch ("Burtch") (collectively, "Defendants"), police officers for the City of Milwaukee, violated his civil rights during a traffic stop. ECF No. 1. He also paid the filing fee. Docket entry dated January 11, 2024. This Order screens Plaintiff's complaint and permits him to proceed on certain claims therein. *See* ECF No. 5 at 3–4.

### 2.    SCREENING STANDARD

"[D]istrict courts have the power to screen complaints filed by all litigants . . . regardless of fee status." *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (citing 28 U.S.C. § 1915(e)(2)(B) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)). The purpose of such screening is to identify claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . .") (citing *Rowe*, 196 F.3d at 783).[1]

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more

---

[1]Although 28 U.S.C. § 1915 specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner *pro se* litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997) (superseded by rule on other, inapplicable grounds); *see also Mitchell v. Farcass,* 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring)).

than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Separately, the Court must examine whether it has subject matter jurisdiction over the claim(s) on which a pro se litigant intends to proceed— "not only may the federal courts police subject matter jurisdiction *sua sponte*, they must." *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) and *United States v. Smith*, 992 F.2d 98, 99 (7th Cir. 1993)). This is because "[j]urisdiction is the 'power to declare law,' and without it the federal courts cannot proceed." *Id.* (quoting *Ruhrgas*, 526 U.S. at 577). Accordingly, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Hoskins*, 320 F.3d at 763 ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense.").

3. **FACTUAL ALLEGATIONS**

On March 21, 2023, Plaintiff flagged down Chovance and Claudio, two Milwaukee police officers, telling them that "an unknown shooter shot at them, and that as a result, he then began to shoot back in defense of others and himself, and that he reasonably believes that the shooter was struck by a bullet." ECF No. 1 at 1–2. Plaintiff states that "he had no weapon in his hand" at the time that he flagged down the officers. *Id.* at 2. Claudio and/or Chovance then approached Plaintiff with their hands on their police service weapons; Claudio, "in a hostile and authoritative tone of voice . . . then demanded Plaintiff surrender his gun to [the officers]." *Id.* It is not clear from the complaint whether Plaintiff had taken his gun back into his hand and was holding it when the officers demanded that he surrender it.

When Claudio made this demand, Plaintiff "believed that he was neither free to leave nor decline Claudio's request." *Id.* Plaintiff surrendered his gun to the officers and got into Claudio's police car, and the officers locked the police car door. *Id.* Plaintiff waited in the car while Claudio and Chovance "radioed dispatch for a warrant check of Plaintiff." *Id.*

At some point, two additional officers—Burtch and Fraley—arrived on the scene and Plaintiff was removed from Claudio's police car to Fraley's police car. *Id.* Each of these officers told Plaintiff that he was "not under arrest" and that they would "let [him] go once [the officers] c[ould] identify [Defendant]." *Id.* Plaintiff states that Defendants did not have warrants to search or arrest him and that he had not consented to any search. *Id.* at 3. Later, Fraley moved Plaintiff back into Claudio's police car and locked him inside. *Id.* at 2.

Eventually, Plaintiff "was taken to Milwaukee County Jail" and booked into custody. *Id.* The State of Wisconsin then charged him with

being a felon in possession of a firearm. *State of Wisconsin v. Londale Quintae Strickling*, Milwaukee County Circuit Court Case No. 2023CF001349, *available at* https://wcca.wicourts.gov (hereinafter the "2023 State Case") (last visited Feb. 1, 2024) (listing Plaintiff's name, "Kabir Elohim Isreal," among the defendant's aliases).[2] (The Court speculates that, while looking for outstanding warrants against Plaintiff, Defendants discovered that Plaintiff had a prior felony conviction after observing him with a gun; this informed the State's charge.)

Three days after booking, he posted bail and was released. ECF No. 1 at 2. The state case was dismissed without prejudice on August 9, 2023. *Id.*; 2023 State Case, docket entry dated August 9, 2023 ("State's Witness IS NOT present. . . . Court orders case DISMISSED without prejudice.").[3]

Plaintiff states that both his gun and his passport were taken during these events, and that he has not gotten either item back. *See id.* at 3.

Plaintiff now brings suit alleging that his encounter with Defendants was unlawful. He frames six causes of action: three under the federal Constitution and three under the Wisconsin Constitution. *Id.* at 3–5. He invokes the Court's federal question jurisdiction, supplemental jurisdiction, and diversity jurisdiction. *Id.* at 1 (citing 28 U.S.C. §§ 1331, 1343(a)(3)–(4),

---

[2]The Court may take judicial notice of public records, including state court records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[3]The case did not progress beyond charging and Plaintiff's initial appearance. A preliminary hearing—the purpose of which is to "determin[e] if there is probable cause to believe a felony has been committed by the defendant, Wis. Stat. § 970.03(1)—was never held. *See* 2023 State Case, docket entries dated May 4, 2023 ("Defendant . . . advised of . . . the right to preliminary hearing. . . . Court reviewed complaint and found probable cause to hold defendant for further proceedings."), May 23, 2023 (setting case for preliminary hearing), June 30, 2023 (adjourning preliminary hearing because state's witness was not present), and August 9, 2023 (dismissing case without prejudice). Defendant represented himself in the state case *Id.* at docket entry dated June 26, 2023.

1367(a), and 1332(a)(1)). For relief, he seeks a total of $24 million in compensatory damages ($1 million from each Defendant for each of the six alleged causes of action) and a total of $4 million in punitive damages. *Id.* at 5.[4]

4. **ANALYSIS**

As detailed below, the Court will not adopt Plaintiff's construction of his causes of action, but finds that Plaintiff's allegations state four federal constitutional claims on which he may proceed.

    **4.1    Search and Seizure-Related Claims**

First, Plaintiff may proceed on two distinct claims of unlawful seizure under the Fourth Amendment to the United States Constitution.

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects individuals against "unreasonable searches and seizures." U.S. Const. Amend. IV. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 628–29 (1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "An arrest is one flavor of seizure," but lesser encounters, such as investigative stops, also qualify as seizures within the meaning of the Fourth Amendment. *Molina v. Latronico*, 430 F. Supp. 3d 420, 434 (N.D. Ill. 2019) (citing *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999)).

---

[4]Plaintiff brought another case in this District about six months ago. *Kabir Elohim Isreal v. State of Wisconsin*, Case No. 23-CV-725 (E.D. Wis.). That case appears to make a passing reference the same encounter described above. *Id.* at ECF No. 1 at 1. For other reasons, the Court found the complaint frivolous and dismissed the case. *Id.* at ECF No. 9.

Page 6 of 16
Case 2:24-cv-00018-JPS   Filed 02/01/24   Page 6 of 16   Document 6

"Investigatory stops, . . . which are limited to brief, nonintrusive detentions, require reasonable suspicion of criminality supported by specific, articulable facts." *Ballheimer v. Batts*, 611 F. Supp. 3d 634, 644 (S.D. Ind. 2020) (citing *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir. 1990)). Meanwhile, formal arrests are more intrusive and "require probable cause to believe the person is committing or has committed a crime." *Id.* (citing *Johnson*, 910 F.2d at 1508). On the other end of the spectrum, "[c]onsensual encounters over which police exercise no control and which are therefore not Fourth Amendment seizures at all require no particularized suspicion to justify them." *Id.* (citing *Johnson*, 910 F.2d at 1508). "[A] seizure [can] ripen[] into 'an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Molina*, 430 F. Supp. 3d at 434 (quoting *Ienco*, 182 F.3d at 523).

Plaintiff alleges that he was seized—either for an investigative stop or formally arrested[5]—when he flagged down Chovance and Claudio and they subsequently put him in a squad car while investigating whether he had any outstanding warrants. *See* ECF No. 1 at 2 ("Plaintiff . . . believed that he was neither free to leave nor decline Claudio's request."). His allegations also show that he was unquestionably placed under formal arrest when he was transported to and booked into a detention facility, and the charge for which he was arrested was later dismissed without prejudice.

---

[5]Whether Plaintiff was formally arrested or merely subject to an investigative stop when Chovance and Claudio put Plaintiff in their police vehicle after he flagged them down is a fact-bound question that the Court does not answer at this juncture. *See United States v. Olson*, 41 F.4th 792, 799 (7th Cir. 2022) ("No two encounters are identical, so there is 'no litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop and becomes an arrest.'" (quoting *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011)).

Plaintiff appears to argue that Defendants had neither reasonable suspicion to seize him for an investigative stop nor probable cause to arrest him. *See* ECF No. 1 at 3–4 (Plaintiff averring that his Fourth Amendment rights "to be free from unlawful arrest and imprisonment of his person," "to be secure in his person against unreasonable seizures" and "to be secure in his effects (i.e. handgun and passport)" were violated when he was "unlawfully detained and arrested"); *see also id.* at 4–5 (Plaintiff averring that the same rights under the Wisconsin Constitution, Article I, § 11 were violated). These allegations support two independent unlawful-seizure claims.

Plaintiff states that he was not holding a gun at the time he flagged down the officers (though he represents that he *told* the officers not only that he had a gun, but also that he had just fired it). If Plaintiff was not holding a gun at that time or if Chovance and Claudio cannot articulate why they believed that Plaintiff had a gun, it may call into doubt whether Chovance and Claudio had a proper legal basis (again, either reasonable suspicion or probable cause) to demand that Plaintiff get into Claudio's police car and make him surrender his weapon. Plaintiff has alleged enough to support a Fourth Amendment claim that he was unreasonably seized by Chovance and Claudio at that time.

Similarly, Plaintiff was unquestionably placed under arrest when the officers took him into custody and transported him to a detention facility. It is not clear what facts the officers knew at the time that they did so, but Plaintiff could potentially argue that whatever facts they knew did not amount to probable cause to arrest him for a crime, including the offense with which he was eventually charged: being a felon in possession of a firearm. Plaintiff has alleged enough to support a Fourth Amendment claim that he was unreasonably seized by the Defendants at that time.

However, for three reasons, Plaintiff may only raise these claims under the federal Constitution through 42 U.S.C. § 1983. First, the claims are duplicative. "For the plaintiff to litigate this claim under the U.S. and state constitutions would be duplicative because 'the parties, claims, facts, and requested relief' in both claims are identical." *Cunningham v. Kenosha County*, No. 23-cv-291-pp, 2023 WL 4976167, at *7 (E.D. Wis. Aug. 3, 2023) (quoting *Norfleet v. Stroger*, 297 F. App'x 538, 540 (7th Cir. 2008)). "There is no reason for the court to allow the plaintiff to proceed on identical claims under federal and state law." *Id.* The provision of the Wisconsin Constitution that Plaintiff cites is no broader than its sister provision in the federal Constitution and does not confer any additional rights on Plaintiff. *See State v. Rowan*, 814 N.W.2d 854, ¶ 9 (Wis. 2012) ("The Wisconsin Supreme Court consistently follows the United States Supreme Court's interpretation of the search and seizure provision of the fourth amendment in construing the same provision of the state constitution." (quoting *State v. Richardson,* 456 N.W.2d 830, 833 (1990)).

Second, "[t]he [Wisconsin] constitution does not authorize suits for money damages except in the context of a takings claim." *Goodvine v. Swiekatowski*, 594 F. Supp. 2d 1049, 1054 (W.D. Wis. 2009) (citing *W.H. Pugh Coal Co. v. State*, 460 N.W.2d 787, 792–93 (Wis. 1990)). Plaintiff seeks *only* monetary damages, but this is not a takings case, so even if his unreasonable seizure claims under state law were not duplicative of those under federal law, he would not be permitted to recover money for them. Third, although Plaintiff cites 28 U.S.C. § 1332(a), the Court may not exercise diversity jurisdiction over these claims. Even if Plaintiff has technically met the diversity and amount-in-controversy requirements of diversity jurisdiction,

his Wisconsin constitutional claims, at bottom, raise *federal* constitutional questions that are appropriately brought through 28 U.S.C. § 1331.

Under all of these circumstances, the Court declines to exercise supplemental jurisdiction over Plaintiff's unreasonable seizure claims under Article I, § 11 of the Wisconsin Constitution, and those claims will be dismissed without prejudice. *See* 28 U.S.C. § 1367(a); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015) ("The exercise of supplemental jurisdiction is purely discretionary.").

### 4.2 Excessive Force Claim

Plaintiff states that his "right to be free from assault and battery guaranteed [by] Article I § 11 of the Constitution for Wisconsin was violated" when he was detained. ECF No. 1 at 5. Even assuming that Article I, § 11 of the Wisconsin Constitution contains such a right, and that Plaintiff has sufficiently alleged a violation thereof, Plaintiff would not be permitted to recover money damages for such a claim if it were allowed to proceed under state law. *Goodvine*, 594 F. Supp. 2d at 1054.

However, Plaintiff's framing of this cause of action leads the Court to believe that he intended to raise some kind of excessive force claim. In the interest of liberally construing Plaintiff's pro se complaint, *Kelsay*, 825 F. Supp. at 217, the Court analyzes whether he may proceed on such a claim under the federal Constitution.

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure[.]" *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must show 1) there was a seizure, and 2) the seizure was objectively unreasonable." *Boone v. City of Milwaukee,* No. 08-C-0167, 2011 WL 4472845,

at *2 (E.D. Wis. Sept. 26, 2011) (citing *Campbell v. White,* 916 F.2d 421, 423 (7th Cir. 1990)).

Plaintiff alleges that, after he flagged down Chovance and Claudio, Claudio used a "hostile and authoritative tone of voice" with him and that they "both had one of their hands on their gun[s]" when they ordered Plaintiff to surrender his own firearm and get in the back of their police vehicle. ECF No. 1 at 2. Plaintiff later alleges that all officers treated him in a "rude, aggressive, and hostile manner" and that he sustained injuries from this encounter. *Id.* at 5.

The Court has some doubt about whether any Defendant's verbal aggression and Chovance and Claudio having their hands on their guns (but not having guns drawn), resulting in Plaintiff's unspecified "injuries," will ultimately sustain a finding of excessive force. However, it would not be prudent to dismiss such a claim at this stage solely on the basis that Defendants seemingly had little, if any, physical contact with Plaintiff and Plaintiff's injuries appear to have been minimal. *See Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) ("Although injury is a relevant factor in determining whether an officer used excessive force, an excessive force claim does not require any particular degree of injury.") (collecting cases). Accordingly, Plaintiff will be allowed to proceed on a claim of excessive force under the Fourth Amendment.

### 4.3 Due Process Claim

Plaintiff alleges that, as a result of the above-described encounter, Defendants unlawfully deprived him of his handgun and passport, and that he still has not gotten these items back. He cites the Fourteenth Amendment in support of this claim. ECF No. 1 at 4.

The Fourteenth Amendment forbids a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. "To prevail on a procedural due process claim, 'a plaintiff must establish that a state actor deprived him of a constitutionally protected liberty or property interest without due process of law.'" *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) (quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005)). Such a claim requires the Court to analyze two questions: first, "whether there exists a liberty or property interest which has been interfered with by the State," and second, "whether the procedures attendant upon that deprivation were constitutionally sufficient." *DuPuy*, 397 F.3d at 503 (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Plaintiff has sufficiently alleged that he had a property interest in his firearm and passport and that Defendants interfered with that property interest by taking these items from him when he was detained and not (or not yet) returning them to him. What procedural safeguards Plaintiff was due prior to being deprived of these items, and whether those safeguards were met, may be the subject of further factual development and legal argumentation. For now, Plaintiff's procedural due process claim under the Fourteenth Amendment survives screening.

### 4.4 Failure to Intervene

Finally, although Plaintiff does not frame a standalone cause of action for each Defendant officer's failure to intervene in the others' alleged violations of his constitutional rights, he alleges that Defendants "were all in a position to intervene but failed to although they knew or should have known that his constitutionally protected rights were being violated." ECF No. 1 at 3.

Page 12 of 16
Case 2:24-cv-00018-JPS    Filed 02/01/24    Page 12 of 16    Document 6

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (citing *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir. 1994) and *Byrd v. Clark*, 783 F.2d 1002, 1006–07 (11th Cir. 1986)).

Plaintiff has sufficiently alleged at least four constitutional violations, as outlined above. Further, he has alleged that at least two, and later *all*, Defendants were on scene at all times when he was detained; accordingly, the Court concludes that he has made a preliminary showing that Defendants had a realistic opportunity to intervene to prevent constitutional harms to Plaintiff. This claim may proceed as to each Defendant.

5.  **CONCLUSION**

For the reasons stated herein, Plaintiff may proceed on certain claims in his complaint, as construed by the Court in this Order. Those claims are:

- A Fourth Amendment claim that, when Chovance and Claudio put Plaintiff in their police vehicle and made him surrender his weapon, these officers seized Plaintiff without a sufficient legal basis;
- A Fourth Amendment claim that Defendants lacked probable cause to arrest Plaintiff when they took him into custody and booked him into detention;
- A Fourth Amendment excessive force claim;

- A Fourteenth Amendment procedural due process claim that Plaintiff was deprived of his handgun and passport without due process of law; and
- A claim that Defendants failed to intervene to stop one another's violations of Plaintiff's constitutional rights.

The Court declines to exercise supplemental jurisdiction over Plaintiff's unreasonable seizure claims under the Wisconsin Constitution (the Fourth and Fifth Causes of Action, in Plaintiff's styling, ECF No. 1 at 4). The Court has no reason or independent basis to exercise jurisdiction over these claims and accordingly they will be dismissed without prejudice.

Plaintiff's next step in this matter is to serve his complaint together with a summons on Defendants. *See generally* Fed. R. Civ. P. 4. Plaintiff may either request service on Defendants by the U.S. Marshals or to obtain service on Defendants on his own, using one of the methods described in Federal Rule of Civil Procedure 4(d)–(e).

If Plaintiff chooses to obtain service on Defendants on his own, he should simultaneously file a request for the Clerk of the Court to issue service packets to him. There is no cost for the Clerk of Court to issue service packets to Plaintiff. If Plaintiff hires a process server to serve Defendants, he will be responsible for that cost.

Alternatively, "at the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3).[6] Congress

---

[6] Federal Rule of Civil Procedure 4(c)(3) provides that the Court must order service by the U.S. Marshals Service if a plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915. *See Williams v. Werlinger*, 795 F.3d 759, 760 (7th Cir. 2015). Here, because he paid the full filing fee, Plaintiff is not authorized to proceed in forma pauperis under 28 U.S.C. § 1915. In similar circumstances, at least one other court in this district has nonetheless proceeded to order service by the

requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65.00 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Congress has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.

Plaintiff must file a notice on or before **February 15, 2024**, indicating whether he will obtain service on Defendants on his own or if he desires service by the U.S. Marshals Service.

Accordingly,

**IT IS ORDERED** that Plaintiff Kabir Elohim Isreal's unreasonable seizure claims under the Wisconsin Constitution, Article I, § 11, be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that, on or before **February 15, 2024**, Plaintiff Kabir Elohim Isreal shall file a notice indicating whether he will obtain service on Defendants Aileene Chovance, Hector Claudio, Guy Fraley, and Kenton Burtch on his own or if he desires service by the U.S. Marshals Service.

Dated at Milwaukee, Wisconsin, this 1st day of February, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

U.S. Marshals. *See Isiah Taylor, III v. Michelle Schmude Reynolds et al.*, Case No. 22-CV-459-PP, ECF No. 12 at 11 (E.D. Wis. Oct. 29, 2022) (ordering service by the U.S. Marshals Service even where plaintiff paid the filing fee in full and did not proceed in forma pauperis). The Court finds it most appropriate here to give Plaintiff the choice of service methods.

Plaintiff will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.