**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

KABIR ELOHIM ISREAL,

     Plaintiff,

v.             Case No. 24-CV-18

KENTON BURTCH, AILEENE CHOVANEC,
HECTOR CLAUDIO and GUY FRALEY,

     Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

  Defendants, by undersigned counsel, hereby submit their Brief in Support of Defendants'
Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).

## **INTRODUCTION**

### I.  FACTUAL BACKGROUND:[1]

  The facts as put forth by Plaintiff in his Complaint are as follows:

  On March 31, 2023, an unknown person shot at Plaintiff, and Plaintiff shot back,
allegedly in self-defense. [ECF 1, ¶¶ 11, 13]. Plaintiff reasonably believed the unknown person
was struck by a bullet. [ECF 1, ¶ 13]. Plaintiff saw Hector Claudio and Aileene Chovanec,
officers with the Milwaukee Police Department, and flagged them down for assistance. [ECF 1,
¶¶ 6, 7, 11].

  Officers Claudio and Chovanec exited the police car and approached Plaintiff. [ECF 1,
14]. Plaintiff informed them his name was Kabir Elohim Isreal, and told them what happened.

---

[1] Although Defendants dispute and/or deny many of the facts alleged by Plaintiff, they will refrain from
any discussion of those factual disputes/denials in this brief on their motion to dismiss, since presentation
of matters outside of the pleadings is not permitted. *See* Fed. R. Civ. P. 12(d).

[ECF 1, ¶13]. Both officers had one or both hands on their guns. [ECF 1, ¶¶ 15, 16]. Officer Claudio, using a hostile and authoritative tone of voice, demanded Plaintiff surrender his gun to them, even though Plaintiff had no weapon in his hand at that time. [ECF 1, ¶¶ 12, 15]. Plaintiff did not feel he was free to leave or decline Officer Claudio's request, so he surrendered his gun and sat in the back of the police car. [ECF 1, ¶¶ 17, 18]. Officer Claudio locked the back of the police car, then Officers Claudio and Chovanec radioed dispatch for a warrant check on Plaintiff. [ECF 1, ¶¶ 19, 20].

About thirty minutes later, Sergeant Kenton Burtch arrived on the scene. [ECF 1, ¶¶ 9, 21]. Sgt. Burtch spoke to Officers Claudio and Chovanec then, about five to ten minutes later, told Plaintiff, "You are not under arrest but they will let you go once they can identify you." [ECF 1, ¶ 22]. About thirty minutes later, Plaintiff was moved from Officer Claudio's vehicle to Detective Guy Fraley's vehicle, and Det. Fraley told Plaintiff, "You are not under arrest but they will let you go once they can identify you." [ECF 1, ¶¶ 8, 22, 23]. About thirty minutes later, Det. Fraley took Plaintiff back to Officer Claudio's vehicle and sat Plaintiff in the back seat and locked the door. [ECF 1, ¶ 23]. About forty-five minutes later, Plaintiff was taken to the Milwaukee County Jail. [ECF 1, ¶ 24].

Three days later, Plaintiff posted $7,500 cash bail and was released from the Milwaukee County Jail. [ECF 1, ¶ 25]. On August 9, 2023, Plaintiff's case was dismissed. [ECF 1, ¶ 26]. Plaintiff's gun and passport have not been returned to him. [ECF 1, ¶ 27].

Defendants request that the Court take judicial notice of the following facts:

2

(1) Plaintiff's previous legal name was Londale Quintae Strickling and, in 2020, he legally changed his name to Kabir Elohim Isreal, in *In Re: the Name Change of Londale Quintae Strickling*, No. 2020CV000141;[2]

(2) Plaintiff had one or more prior felony convictions in the State of Wisconsin at the time of this incident, and Defendants specifically refer the Court to the following cases: *State of Wisconsin v. Londale Q. Strickling*, No. 2002CF001187 (felony Burglary conviction);[3] *State of Wisconsin v. Londale Quintae Strickling*, No. 2008CF002500 (felony Burglary conviction);[4] and *State of Wisconsin v. Londale Quintae Strickling*, No. 2015CF000138 (felony Possession of Burglarious Tools conviction);[5] and

(3) As a result of the incidents Plaintiff discusses in his Complaint, and that Plaintiff has one or more prior felony convictions, Plaintiff was charged with the felony offense of "Possession of a Firearm By A Felon" under *State of Wisconsin v. Londale Quintae Strickling*, No. 2023CF001349.[6]

## II.   CLAIMS:

Plaintiff made various claims in his Complaint. [ECF 1]. The Court's screening order [ECF 6] determined the following claims could proceed:

(1) Fourth Amendment claim involving the alleged seizure of his gun by Officer Claudio. [ECF 6: 6-8, 13; ECF 1, ¶¶ 14-23, 38]. This claim can only be raised under the U.S.

---

[2]https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CV000141&countyNo=40&index=0
[3]https://wcca.wicourts.gov/caseDetail.html?caseNo=2002CF001187&countyNo=67&index=0&mode=details
[4]https://wcca.wicourts.gov/caseDetail.html?caseNo=2008CF002500&countyNo=40&index=0&mode=details
[5]https://wcca.wicourts.gov/caseDetail.html?caseNo=2015CF000138&countyNo=40&index=0&mode=details
[6]https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CF001349&countyNo=40&index=0&mode=details

Constitution—not the state constitution, so Plaintiff's state law claims were dismissed without prejudice. [ECF 6: 9-10, 15; ECF 1, ¶ 41].

(2) Fourth Amendment claim involving the alleged seizure pertaining to Plaintiff's arrest by Officers Claudio and Chovanec. [ECF 6: 6-8, 13; ECF 1, ¶¶ 24-25, 37]. This claim can only be raised under the U.S. Constitution—not the state constitution—so Plaintiff's state law claims were dismissed without prejudice. [ECF 6: 9-10, 15; ECF 1, ¶ 40].

(3) Fourth Amendment claim involving the alleged use of excessive force when the defendant officers "unlawfully detained and arrested [Plaintiff] in a rude, aggressive, and hostile manner." [ECF 6: 11, 13; ECF 1, ¶¶ 15-23, 42].

(4) Fourteenth Amendment due process claim involving the alleged deprivation of Plaintiff's handgun and passport, neither of which have been returned to Plaintiff. [ECF 6: 11-12, 14; ECF 1, ¶¶ 15, 18, 27, 39].

(5) Failure to intervene to protect Plaintiff's constitutional rights claim against all defendants. [ECF 6:12-13, 14; ECF 1, ¶¶ 34-35].

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a complaint due to failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that

4

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557 (brackets omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. PLAINTIFF'S FOURTH AMENDMENT RIGHTS WERE NOT VIOLATED BY OFFICER CLAUDIO'S SEIZURE OF PLAINTIFF'S GUN FOLLOWING THE SHOOTING.

In his Complaint, Plaintiff alleges his Fourth Amendment rights against unreasonable search and seizure were violated when, following Plaintiff's admission to Officers Chovanec and Claudio that he shot someone, allegedly in self-defense, Officer Claudio "demanded" he surrender his gun. [ECF 1, ¶¶ 13, 15, 18, 38].

Defendants deny many of the alleged facts put forth by the Plaintiff, including that Officer Claudio "demanded" that Plaintiff surrender his gun. Regardless, even if Plaintiff's version of the events were correct, for the following reasons—each of which independently justifies dismissal—Plaintiff's claims concerning the seizure of his gun should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted:

### A. Plaintiff Is A Convicted Felon Who Is Not Legally Permitted To Possess A Firearm.

At the time of this incident, Plaintiff already had one or more prior felony convictions in the State of Wisconsin and was not permitted to possess a firearm, per Wisconsin Statute § 941.29(1m)(a). Indeed, as a result of these incidents, he was charged with "Possession of a Firearm by A Felon" under Milwaukee County case number 2023CF001349, based on his prior felony conviction for "Possession of Burglarious Tools," a Class I felony, in which he was convicted April 13, 2017. *See State of Wisconsin v. Londale Quintae Strickling*, No. 2023CF001349.[7] Wisconsin Statute § 941.29(1m)(a) has been upheld as constitutional, and does not violate the Second Amendment of the Constitution. *See State v. Roundtree*, 2021 WI 1, ¶ 53, 395 Wis. 2d 94, 115, 952 N.W.2d 765, 775.

Accordingly, Plaintiff did not have a legally recognized right to possess a firearm, and so the Defendant officers did not violate any of his rights by seizing his gun. As such, his Fourth Amendment claims concerning seizure of the gun should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. As A Matter Of Officer And/Or Public Safety, The Officers Were Entitled To Take Possession Of The Firearm.

Defendant officers responded to the scene of a shooting, where Plaintiff informed them he'd shot someone. [ECF 1, ¶¶ 6, 7, 11, and 13].

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated [. . .]" U.S. Const. amend. IV. Warrantless searches and seizures are constitutionally permissible in certain situations, including where exigent circumstances exist. *Mincey v. Arizona*, 437 U.S. 385,

---

[7] Plaintiff's name was previously "Londale Quintae Strickling" before legally changing it to "Kabir Elohim Isreal" in 2020. *See In Re: the Name Change of Londale Quintae Strickling*, No. 2020CV000141.

6

394 (1978). "Exigent circumstances exist if a[n] officer had an objectively 'reasonable belief that there was a compelling need to act and no time to obtain a warrant.'" *United States v. Bell*, 500 F.3d 609, 613 (7th Cir. 2007) (quoting *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006)). For example, where police reasonably believe that their safety or the safety of the public may be threatened, exigent circumstances exist. *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996).

The presence of a gun where a person could access it and potentially use it against officers or injure themselves or others with it has been held to be an exigent circumstance justifying warrantless seizure of a gun. *See United States v. Richmond*, 924 F.3d 404, 417 (7th Cir. 2019) (concluding that exigent circumstances justified warrantless seizure of a handgun from the threshold of the defendant's residence during an encounter on his porch where officers reasonably believed that the defendant may lunge toward what the officers suspected was a gun, and unknown duplex occupants might access the gun by opening the front door and picking it up off of the threshold (citing *Kentucky v. King*, 563 U.S. 452, 466 (2011)). *See also New York v. Quarles*, 467 U.S. 649, 657 (1984) (holding a gun that the suspect concealed somewhere in a supermarket before being apprehended was a public safety concern because the suspect's accomplice might make use of it, or a customer or employee might later come upon it); *United States v. Huddleston*, 593 F.3d 596, 600-601 (7th Cir. 2010) (noting that a number of other circuits have found the presence of guns to justify searches and seizures on the basis of exigent circumstances, and holding that the officers' warrantless search of a suspect fell within the exigent circumstances exception to the warrant requirement because the trespassing suspect, although asleep, was holding a gun and could wake up at any time); *United States v. Hopewell*, 498 F. App'x 609, 612 (7th Cir. 2012) (Holding exigent circumstances justified the search of a

suspect's backpack because the officer who searched the bag was experienced in firearms safety and knew that the suspect had displayed, loaded, and hidden in his backpack the revolver, so the officer could reasonably conclude that the gun posed a safety risk and was justified in searching the backpack); and *United States v. Kempf,* 400 F.3d 501, 503 (7th Cir. 2005) (finding officers' safety justification for warrantless entry of house when they believed defendant could access potentially loaded gun inside was reasonable).

Accordingly, because Plaintiff told officers he'd just shot someone, it was reasonable for the officers to assume he had a gun and for the officers to seize that gun as a matter of officer safety and/or public safety, and so his Fourth Amendment claims on those grounds should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C.    The Gun Is Evidence Of A Potential Crime.

Defendant officers responded to the scene of a shooting in which Plaintiff informed them that he'd shot someone. [ECF 1, ¶¶ 6, 7, 11, and 13]. Although Plaintiff claimed the shooting was in self-defense [*see* ECF 1, ¶¶ 11, 13], Officers were not required to accept that explanation at face value, and still had a duty to investigate and collect any items that could be evidence of a crime. *See Terry v. Ohio*, 392 U.S. 1, 23 (1968) (noting it would be "poor police work" for an experienced officer to give up an investigation of suspicious behavior solely because that behavior might also have an innocent explanation).

It was constitutionally permissible for officers to seize the gun, as it constituted evidence of a potential crime, and a threat of the imminent destruction of evidence provides exigent circumstances for seizure without a warrant. *See United States v. Rucker*, 540 F. Supp. 3d 798, 802 (N.D. Ill. 2021) (citing *United States v. Haldorson*, 941 F.3d 284, 294-295 (7th Cir. 2019) and *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010)).

8

Alternatively, regardless of any threat of imminent destruction of evidence, it is constitutionally permissible for police to seize an item of evidentiary value, without a warrant, if it is in a public place or in plain view: "Objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York,* 445 U.S. 573, 586-587 (1980). A different situation is presented, however, when the property in open view is "situated on private premises to which access is not otherwise available for the seizing officer." *Id.* at 587 (quoting *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 354, (1977)). As these cases indicate, "plain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. *Texas v. Brown*, 460 U.S. 730, 737-739 (1983).

The Supreme Court has articulated three requirements for a warrantless seizure of incriminating evidence: (1) the officer may not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the item must have been in plain view; and (3) its incriminating character must also be immediately apparent. *See Horton v. California*, 496 U.S. 128, 136 (1990); *United States v. Curlin*, 638 F.3d 562, 566 (7th Cir. 2011).

Here, the officers did not violate the Fourth Amendment in arriving at the place from which the gun could be plainly viewed: Plaintiff claims he saw Officers Chovanec and Claudio in their police car and flagged them down for assistance. [ECF 1, ¶¶ 6, 7, 11]. This suggests Plaintiff was outside and in a public area, since he was able to see the officers operating their vehicle and to physically get their attention. Likewise, the Criminal Complaint filed in *State of Wisconsin v. Londale Quintae Strickling*, No. 2023CF001349, a case for which Defendants

previously requested that this Court take judicial notice, suggests the incidents took place in a public area, with officers responding to the area of 3624 W. North Ave. in Milwaukee following a shooting complaint and ShotSpotter activation, being flagged down by Plaintiff while still in their police vehicle, and told that the shooting happened while Plaintiff and a tow truck driver were trying to hook up Plaintiff's van so it could be towed away. The officers, who encountered Plaintiff as they were driving to the scene of the shooting, did not violate the Fourth Amendment, since they were in a public area where Plaintiff had no reasonable expectation of privacy. *See United States v. Knotts*, 460 U.S. 276 (1983) (Noting that a person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in their movements from one place to another); *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (citing *Knotts* and stating, "The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible."); and *California v. Greenwood*, 486 U.S. 35, 41 (1988) ("[P]olice cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public.").

And, regardless of whether Plaintiff was in a public area or one in which a person would ordinarily have a reasonable expectation of privacy, the officers did not violate the Fourth Amendment by arriving there since Plaintiff flagged them down, requesting that they come to that area and assist him. *See Katz v. United States*, 389 U.S. 347, 351 (1967) (internal citations omitted) (Stating, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.")

Here, the gun was in plain view: Plaintiff informed the officers that he'd just shot someone [ECF 1, ¶13], which put the officers on notice that he had a gun. Plaintiff claims he was told to surrender his gun to the officers and did in fact surrender it [ECF 1, ¶¶ 15, 18], effectively putting the gun in plain view. *Texas v. Brown* stated:

> "The *Coolidge* [*v. New Hampshire*, 403 U.S. 443, 465 (1971)] plurality observed, 'It is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure,' simply as 'the normal concomitant of any search, legal or illegal.'[. . .] The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question."

*Texas v. Brown*, 460 U.S. at 737. It explained, "'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." *Texas v. Brown*, 460 U.S. at 738-739. As discussed in a previous section of this brief, the officers' prior justification for access to the gun was officer safety and/or public safety. Once the gun was recovered from Plaintiff on this basis, it was considered to be "in plain view."

Here, the gun's incriminating character was immediately apparent to the officers, as Plaintiff informed them that he'd shot someone with it [ECF 1, ¶ 13], and since shooting a person is a crime, as is carrying a concealed weapon. *See* Wis. Stat. §§ 940.01 and 939.32 (attempted intentional homicide), 941.20(1)(c) (endangering safety by use of a dangerous weapon), 941.30 (recklessly endangering safety), and 941.23(2) (carrying concealed weapon).

Accordingly, since the warrantless seizure of Plaintiff's gun was constitutionally permissible since it was evidence of a crime, Plaintiff fails to state a valid claim for relief concerning the seizure of his gun, and so his Fourth Amendment claims on those grounds should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. PLAINTIFF'S ARREST DID NOT VIOLATE HIS FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEIZURE.

In his Complaint, Plaintiff alleges his Fourth Amendment right against unreasonable search and seizure were violated when, following Plaintiff's admission to Officers Chovanec and Claudio that he shot someone, the defendant officers detained him and subsequently arrested him despite that Plaintiff claimed the shooting was in self-defense. [ECF 1, ¶¶ 13-24, 37].

Plaintiff's Complaint suggests he was arrested for shooting someone in self-defense, but that is incorrect: Defendants request that the Court take judicial notice of *State of Wisconsin v. Londale Quintae Strickling*, No. 2023CF001349, which shows Plaintiff[8] was charged with a felony count of "Possession of a Firearm By A Felon" pursuant to Wis. Stat. § 941.29(1m)(a), in connection with these incidents.[9]

Regardless, under either scenario, Plaintiff's Fourth Amendment rights were not violated by his detention and subsequent arrest: The facts as put forth by Plaintiff support various charges, including but not necessarily limited to: attempted intentional homicide (*see* Wis. Stat. §§ 940.01 and 939.32), endangering safety by use of a dangerous weapon (*see* Wis. Stat. § 941.20)(1)(c)), recklessly endangering safety (*see* Wis. Stat. § 941.30), and carrying concealed weapon (*see* Wis. Stat. § 941.23(2)). Although Plaintiff claims he acted in self-defense, a claim of self-defense does not prevent the State from pursuing criminal charges but, rather, is an affirmative defense to be raised at trial which will preclude a finding of guilt if the finder of fact determines the State did not successfully rebut the defense. *See Brown v. Eplett*, 48 F.4th 543, 553-554 (7th Cir. 2022) (internal citations omitted) (stating, "As a general matter, self-defense is

---

[8]As stated in a previous footnote, Plaintiff's name was previously "Londale Quintae Strickling" before legally changing it to "Kabir Elohim Isreal" in 2020, per *In Re: the Name Change of Londale Quintae Strickling*, No. 2020CV000141.
[9]https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CF001349&countyNo=40&index=0&mode=details

regarded as an affirmative defense in Wisconsin law, in that it supplies a defense to the charged crime even where the State has otherwise succeeded in establishing each of the elements of that crime beyond a reasonable doubt[. . .] Once a defendant establishes the existence of a statutory affirmative defense (including self-defense)[. . .] Wisconsin law, independent of federal due process requirements, imposes on the State the burden of disproving the defense beyond a reasonable doubt.")

Accordingly, based on the facts as alleged by Plaintiff, there were multiple grounds upon which to validly detain and arrest Plaintiff. Likewise, under the facts which Defendants request be judicially noticed by the Court, the detention and subsequent arrest of Plaintiff are valid because Plaintiff, who had previously been convicted of at least one felony in Wisconsin, committed a criminal offense just by the mere possession of the gun. *See* Wis. Stat. § 941.29(1m)(a).

Under either scenario, Plaintiff fails to state a valid claim for relief concerning his detention and arrest, and so his Fourth Amendment claims on those grounds should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.   DEFENDANTS DID NOT USE EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT.

In his Complaint, Plaintiff alleged a state constitutional claim "to be free from assault and battery" and claimed that right was violated when the defendant officers "unlawfully detained and arrested [him] in a rude, aggressive, and hostile manner." [ECF 1, ¶ 42]. In its screening order, the Court construed the claim as an excessive force claim, and stated it would permit the claim to proceed as a Fourth Amendment claim, noting that it could not proceed as a state constitutional claim because money damages are not permitted for such claims under state law. [ECF 6: 10-11].

13

At the outset, the Court stated it "has some doubt about whether any Defendants' verbal aggression and [Chovanec] and Claudio having their hands on their guns (but not having guns drawn), resulting in Plaintiff's unspecified 'injuries,' will ultimately sustain a finding of excessive force," but noted, "However, it would not be prudent to dismiss such a claim at this stage solely on the basis that Defendants seemingly had little, if any, physical contact with Plaintiff and Plaintiff's injuries appear to have been minimal." [ECF 6: 11].

Defendants deny having their hands on their guns and being "rude," "aggressive" or "hostile" towards Plaintiff during his detention and subsequent arrest, and deny using excessive force. Regardless, even if Plaintiff's version of the events were correct and Defendants, in responding to reports of a shooting, approached Plaintiff with their hands on their guns and were verbally aggressive towards Plaintiff in responding to reports of a shooting, as Plaintiff claims, this is insufficient to support a claim of excessive force under the Fourth Amendment, so he has failed to state a claim upon which relief may be granted.

Whether the officers' use of force in the course of a seizure violates the Fourth Amendment is judged by an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386 (1989). Reasonableness is judged by the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-397. "While excessive force does not require injury, no injury gives weight to the assertion of no excessive force." *Meyer v. Robinson*, 992 F.2d 734, 739 (7th Cir. 1993).

In *Worthon v. Dowhen*, 81 F.3d 164 (7th Cir. 1996), a correctional officer called the plaintiff various offensive racial slurs when preparing him for transport to court, and the plaintiff filed suit under 42 U.S.C. § 1983 alleging "verbal abuse." The district court dismissed the plaintiff's verbal abuse claim under Fed. R. Civ. P. 12(b)(6), and the Seventh Circuit Court of Appeals affirmed, reasoning, "Although racial slurs are unprofessional and deplorable, they do not constitute a deprivation of constitutionally protected rights, *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993), and an allegation of such a deprivation is an essential element of a § 1983 action." *Worthon*, *supra*. *Gavin v. Ammons*, 21 F.3d 430 (7th Cir. 1994), citing *Patton*, likewise held that verbal threats are not enough to establish a federal constitutional claim. *Id*.

Plaintiff has not alleged any injury that occurred as a result of the alleged use of excessive force, and indeed does not even allege any physical force was used. Per *Meyer*, this gives weight to the assertion that there was no excessive force. And if offensive racial slurs directed towards an inmate awaiting transport to court are not sufficient to constitute a deprivation of constitutionally protected rights, as was the case in *Worthon*, then certainly officers being "rude," "aggressive," and "hostile," to someone who admitted they'd just shot someone is insufficient to establish any constitutional violations.

Accordingly, this claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.   ANY ALLEGED FAILURE BY DEFENDANTS TO RETURN PLAINTIFF'S GUN AND PASSPORT DO NOT VIOLATE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS.

In his Complaint, Plaintiff alleges his Fourteenth Amendment right to due process was violated when the defendant officers "unlawfully seized, then permanently deprived him" of his

15

handgun and passport. [ECF 1, ¶¶ 15, 18, 39]. He stated that neither item has been returned to him yet. [ECF 1, ¶ 27].

For the following reasons, each of which independently justifies dismissal, Plaintiff's claims concerning the Defendants' failure to return his gun and passport should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted:

### A. Plaintiff's Claims For Deprivation Of Property Are Not Actionable Under § 1983 Because Adequate State Remedies Are Available to Redress The Alleged Deprivation.

Claims for deprivation of property are not actionable under § 1983 if adequate state remedies are available to redress the deprivation, even if the property is taken intentionally. *Foster v. Tanem*, No. 21-CV-1244-PP, 2022 WL 3647909, at *4 (E.D. Wis. Aug. 24, 2022) (internal citations omitted). Put differently, "'[u]nauthorized deprivations of property violate the due-process clause only when no post-deprivation procedures are available.'" *Id.* (quoting *Washington v. Campbell*, No. 20-CV-990, 2021 WL 2188358, at *4 (E.D. Wis. May 28, 2021) and *Morris v. Scott*, 840 F. App'x 14, 15 (7th Cir. 2021)). The state of Wisconsin "provides several post-deprivation procedures for challenging the taking of property." *Cole v. Litscher*, 343 F. Supp. 2d 733, 742 (W.D. Wis. 2004) (citing Wis. Const. art. I, § 9; Wis. Stat. §§ 810 and 893); *see Washington*, 2021 WL 2188358, at *4 (citing Wis. Stat. § 968.20).

Accordingly, because the state of Wisconsin provides adequate post-deprivation procedures for challenging the taking of property, rendering Plaintiff's § 1983 claims not actionable, his claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief may be granted.

**B.** **Plaintiff Fails To Establish He Has Followed The Appropriate Procedures To Request The Return Of His Property.**

Due process requires, at a minimum, that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). That notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. When state law remedies are established by published, generally available state statutes and case law, no individualized notice of those procedures is required. *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999). Wisconsin Statute § 968.20 provides state law remedies for "return of property frozen or seized." *Id*.

Defendants note that, in order to have seized property returned to him, Plaintiff must file a "Petition for Return of Property" with the Milwaukee County Circuit Court, Criminal Division."[10] This form references Wisconsin Statute § 968.20, and simplifies the process for petitioning for return of property.

Plaintiff's claim that he was denied due process with respect to the return of his property fails because he has a remedy available to be heard by the court regarding return of his property, but has not demonstrated that he availed himself of that remedy. Plaintiff does not state what, if anything, he did to seek return of his property, and has not demonstrated that he ever completed and filed this form or otherwise filed any motion with the circuit court requesting the return of his gun and/or passport. If Plaintiff did not affirmatively request return of his property via the appropriate channels, he cannot establish he was denied due process of law, as there is no

---

[10]https://county.milwaukee.gov/files/county/courts/Criminal--Traffic/PetitionforReturnofPropertyForm.pdf

deprivation of due process where he did not take the steps necessary to properly put the matter before the circuit court for consideration and decision.

C. **None Of The Named Defendants Were Authorized To Return Plaintiff's Gun, And None Were Required To Return His Passport.**

Pursuant to Wisconsin Statute § 968.20, Plaintiff's remedy to obtain return of his property is with the circuit court in the county in which his property was seized. *Id*. Only the circuit court has the authority to authorize release of Plaintiff's gun. Although the officers may have had discretion to release Plaintiff's passport, they were not required to do so absent a court order.

Once the motion for return of property is filed with the circuit court, the circuit court must hold a hearing and permit all persons who have or may have an interest in the property to be heard. *See* Wis. Stat. § 968.20(1g). Pursuant to Wisconsin Statute § 968.20(2), the only situation in which an officer may return property to the person from whom it was seized without the requirement of a hearing is when the property is not required for evidence or use in further investigation, and only if that property is not contraband or property covered under Wisconsin Statute §§ 968.20(1m) or 968.20(1r). Plaintiff's gun falls under Wisconsin Statute § 968.20(1m)(d) because Plaintiff has one or more prior felony convictions in the State of Wisconsin and, as such, is prohibited from possessing a firearm under state law (*see* Wis. Stat. § 941.29(1m)(a)). Although Wisconsin Statute § 968.20(2) appears to give officers authority to return Plaintiff's passport without the requirement of a hearing, provided it is not required for evidence or use in further investigation, officers were not required to do so, in which case Plaintiff still would have been obligated to follow the procedures set forth in Wisconsin Statute § 968.20(1) (requiring that an application for the return of property be filed with the circuit court for the county in which the property was seized) before his property could be released. *See State*

*v. Jones*, No. 2023AP1535-CR, 2024 WL 2198150, at *6 (Wis. Ct. App. May 16, 2024) (Noting the general presumption that the use of the word "may" in a statute confers discretion on an actor, but does not mandate any particular act, and holding, "On its face, § 968.20(2) allows officers, in their discretion, to return certain types of seized property under certain circumstances, but it does not mandate that the State return any property under any circumstances.").

Accordingly, because the named defendants have no legal authority to release Plaintiff's gun and no obligation to release Plaintiff's passport absent a properly-filed motion for return of property under Wisconsin Statute § 968.20 and ensuing order from the court, any claims against them must be dismissed for failure to state a claim upon which relief may be granted.

**D. <u>Plaintiff Is Not Entitled To Have His Gun Returned.</u>**

For the following reasons, each of which is independently sufficient, Plaintiff is not entitled to have his gun returned to him:

**(1) <u>Plaintiff is a convicted felon.</u>**

As noted earlier in this brief along with Defendants' request that the Court take judicial notice, at the time of this incident Plaintiff already had one or more prior felony convictions in the State of Wisconsin. Given Plaintiff's status as a convicted felon, he was not permitted to possess a firearm, per Wisconsin Statute § 941.29(1m)(a). Indeed, as a result of these incidents, Plaintiff was charged with "Possession of a Firearm By A Felon" under *State of Wisconsin v. Londale Quintae Strickling*, No. 2023CF001349,[11] based on his prior felony conviction for "Possession of Burglarious Tools," a Class I felony, in which he was convicted April 13, 2017 under *State of Wisconsin v. Londale Quintae Strickling*, 2015CF000138.[12]

---

[11] https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CF001349&countyNo=40&index=0&mode=d etails

[12] https://wcca.wicourts.gov/caseDetail.html?caseNo=2015CF000138&countyNo=40&index=0&mode=d etails

Because Plaintiff has one or more prior felony convictions in the State of Wisconsin and, as such, is not permitted to possess a firearm (*see* Wis. Stat. § 941.29(1m)(a)), he is not entitled to have his gun returned to him. *See* Wis. Stat. § 968.20(1)(d). Property which may not be returned to an owner under Wisconsin Statute § 968.20(1m) must be disposed of under Wisconsin Statute §§ 968.20(3) and (4). *See* Wis. Stat. § 968.20(1m)(e).

**(2)**     <u>The gun is evidence of a crime.</u>

According to the facts as put forth by Plaintiff, the gun was used to shoot at someone. Although Plaintiff alleges he shot in self-defense, after being shot at first, that is merely a defense to a crime charged, and does not preclude the State from pursuing criminal charges. *See Brown v. Eplett*, *supra.* It is ultimately up to a jury to determine whether a defendant acted in self-defense. *See State v. Stietz*, 2017 WI 58, ¶15, 375 Wis. 2d 572, 895 N.W.2d 796 (requiring jury instruction on self-defense when a reasonable jury could find that a prudent person in the position of the defendant under the circumstances existing at the time of the incident could believe that he was exercising the privilege of self-defense).

Because the gun may be reasonably needed as evidence, and all proceedings and investigations in which it might be required have not been completed,[13] the court may not need to return it even if Plaintiff were lawfully permitted to possess it (which he is not). *See* Wis. Stat. §§ 968.20(1g)(a) and (b).

## V.   THERE WERE NO CONSTITUTIONAL VIOLATIONS REQUIRING INTERVENTION.

In his Complaint, Plaintiff alleges "at all times relevant herein [Chovanec], Claudio, Burtch, and Fraley were all in a position to intervene but failed to although they knew or should

---

[13] *See State of Wisconsin v. Londale Quintae Strickling*, No. 2023CF001349 (https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CF001349&countyNo=40&index=0&mode=details) (Case was dismissed without prejudice, with the State free to re-file the charges).

have known that [Plaintiff's] constitutionally protected rights were being violated." [*See* ECF 1, ¶ 34].

A police officer, whether supervisory or nonsupervisory, who is present and fails to intervene to prevent other officers from infringing constitutional rights of citizens is liable under § 1983 if that officer had reasonable opportunity to intervene to prevent harm from occurring and if the officer had reason to know that excessive force was being used, that citizen has been unjustifiably arrested, or that any constitutional violation has been committed by law enforcement official. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (citations omitted).

As analyzed and discussed in other sections/subsections of this brief, the officers did not violate Plaintiff's constitutional rights. The Defendants' actions were constitutionally permissible and, as such, there was no need for any officers to intervene on Plaintiff's behalf to protect his rights that they had no reason to believe were being violated and, in fact, were not violated.

Accordingly, this claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**VI.    REGARDLESS OF WHETHER ANY CONSTITUTIONAL VIOLATIONS ACTUALLY OCCURRED, DEFENDANTS ARE SHIELDED BY THE DOCTRINE OF QUALIFIED IMMUNITY, BECAUSE THERE WAS NO PRECEDENT CLEARLY ESTABLISHING THAT A FELON IN POSSESSION OF A FIREARM WHO WAS INVOLVED IN A SHOOTING SHOULD NOT HAVE BEEN DETAINED OR ARRESTED, AND SHOULD NOT HAVE HAD HIS GUN AND PASSPORT SEIZED.**

An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct. *Ashcroft v. al–Kidd,* 563 U.S. 731 (2011). Qualified immunity exists to protect public servants from liability for reasonable mistakes made while performing public duties. *See Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). In *Hunter v. Bryant*, 502 U.S.

224 (1991), the United States Supreme Court stressed the importance of resolving immunity questions at the earliest possible stage of litigation, and is an issue that should be decided by the court long before trial. *Id*.

Defeating qualified immunity requires: (1) conduct violating the plaintiff's constitutional or statutory rights that is: (2) clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court's decision in *Pearson v. Callahan*, 555 U.S. 223, 242-243 (2009), encouraged courts to begin with the substantive constitutional violation, but they are also free to consider first whether the right is clearly established if doing so will conserve judicial resources. Whether the law was clearly established at a specific time is a question of law that must be answered by the Court, as opposed to a jury. *See Pearson,* 555 U.S. at 232.

A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *Plumhoff v. Rickard*, 572 U.S. 765, 778-779 (2014) (citing *Ashcroft*, 563 U.S. at 741). In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." *Id*. In determining whether a right was clearly established, the Supreme Court has "'repeatedly told courts … not to define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 572 U.S. at 780 (quoting *Ashcroft*, 563 U.S. at 742). The clearly established law must be "particularized" to the facts of the case, otherwise "[p]laintiffs would be

able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson,* 483 U.S. at 639-640.

As stated in the previous sections, there were no constitutional violations, because: (1) There were multiple constitutionally permissible grounds upon which officers could seize Plaintiff's gun following the shooting (e.g., Plaintiff was a convicted felon who was not legally permitted to possess a firearm, officers were justified in taking it as a matter of officer safety, and the gun was evidence of a potential crime); (2) Plaintiff's detention and arrest were constitutionally permissible under either the scenario alleged by Plaintiff (e.g., admitting to officers he shot at someone) or the scenario that actually occurred as shown in the judicially-noticed case involving possession of a firearm by a felon; (3) even under the facts alleged by Plaintiff (e.g., officers arriving at the scene of the shooting and being told by Plaintiff that he shot someone, then putting their hands on their guns and demanding that Plaintiff surrender his gun, detaining him in their vehicle and eventually arresting him) he has not established excessive force was used; and (4) for various reasons (e.g., deprivation of property not being actionable under § 1983 where adequate state law remedies are available to redress the alleged deprivation, failure to follow the appropriate procedures to request return of property, that none of the named Defendants have any authority and/or obligation absent a court order to return Plaintiff's property once it was taken into evidence, and that Plaintiff was not entitled to have his gun returned because he is a convicted felon who cannot legally possess a gun and/or because the gun is evidence of a crime) any alleged failure by Defendants to return Plaintiff's property did not violate Plaintiff's due process rights.

Regardless, even if Plaintiff could establish a constitutional violation occurred, Defendants are shielded by the doctrine of qualified immunity because Plaintiff fails to establish

the facts he put forth violated any clearly established constitutional rights. There is no clearly established law that states that it is constitutionally impermissible for police, upon arriving at the scene of a shooting and being told by a person that he shot someone, to demand that the person surrender their gun, take the person's ID (in this case, a passport), detain them in a police car, and then ultimately arrest them.

Because Defendants did not violate any "clearly established right" of Plaintiff, they are protected from suit by the doctrine of qualified immunity. Accordingly, this Court should find that the Defendants are entitled to qualified immunity, and should dismiss the Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant this Motion to Dismiss and dismiss all claims against the Defendants with prejudice.

Dated and signed at Milwaukee, Wisconsin this 22nd day of May, 2024.

EVAN C. GOYKE
City Attorney

s/ Maria Mesoloras
MARIA MESOLORAS
Assistant City Attorney
State Bar No. 1098921
JENNIFER WILLIAMS
Deputy City Attorney
State Bar No. 1058087
*Attorneys for Defendants*

P.O. ADDRESS:
200 East Wells Street
City Hall 800
Milwaukee, WI 53202
414-286-2601 – Telephone
414-286-8550 – Facsimile
Email:   mmesol@milwaukee.gov
           jewill@milwaukee.gov
1032-2024-401/291382