# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KABIR ELOHIM ISREAL,

                     Plaintiff,

v.

AILEENE CHOVANEC, HECTOR
CLAUDIO, GUY FRALEY, and
KENTON BURTCH,

                     Defendants.

Case No. 24-CV-18-JPS

**ORDER**

## 1.      INTRODUCTION

Plaintiff Kabir Elohim Isreal ("Plaintiff") sues Defendants Aileene Chovanec ("Chovanec"), Hector Claudio ("Claudio"), Guy Fraley ("Fraley"), and Kenton Burtch ("Burtch") (collectively, "Defendants") for violations of his constitutional rights. ECF No. 1.

In February 2024, the Court screened Plaintiff's complaint and concluded that he could proceed on the following claims:

- A Fourth Amendment claim that, when Chovanec and Claudio put Plaintiff in their police vehicle and made him surrender his weapon, these officers seized Plaintiff without a sufficient legal basis;

- A Fourth Amendment claim that Defendants lacked probable cause to arrest Plaintiff when they took him into custody and booked him into detention;

- A Fourth Amendment excessive force claim;

- A Fourteenth Amendment procedural due process claim that Plaintiff was deprived of his handgun and passport without due process of law; and

- A claim that Defendants failed to intervene to stop one another's violations of Plaintiff's constitutional rights.

ECF No. 6 at 13–14.

Now before the Court is Defendants' motion to dismiss Plaintiff's complaint under Federal Rule 12(b)(6) of Civil Procedure. ECF No. 31.[1] The motion is fully briefed. ECF Nos. 32, 37, 38, 39, 44. For the reasons discussed herein, the motion will be granted in part and denied in part.

## 2.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). In reviewing the complaint, the Court is required to "accept as true all of the well-

_____

[1]Also before the Court are Plaintiff's motions for default judgment and for a disposition date. ECF Nos. 25, 46. The Court will deny the former as premature and the latter as moot.

pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81.

**3.    FACTUAL BACKGROUND**

Plaintiff's complaint alleges the following. On March 21, 2023, Plaintiff flagged down Chovanec and Claudio, two Milwaukee police officers, telling them that his name was Kabir Elohim Isreal, that "an unknown shooter shot at them, and that as a result, he then began to shoot back in defense of others and himself, and that he reasonably believe[d] that the shooter was struck by a bullet." ECF No. 1 at 1–2.

Several years before this interaction, in 2020, Plaintiff legally changed his name from Londale Quintae Strickling to Kabir Elohim Isreal. *See In Re: the Name Change of Londale Quintae Strickling*, Milwaukee County Court Case No. 2020CV000141, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CV000141&county No=40&index=0 (last visited Jan. 13, 2025).[2] He did so after having previously amassed several state felony convictions. *See State of Wisconsin v. Londale Q. Strickling*, Waukesha County Case No. 2002CF001187, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2002CF001187&county No=67&index=0&mode=details (last visited Jan. 13, 2025); *State of Wisconsin v. Londale Quintae Strickling*, Milwaukee County Case No. 2008CF002500, *available                                                    at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2008CF002500&county

---

[2]The Court may take judicial notice of public records, including state court records. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (noting that judicially-noticed matters of public record may be considered on a motion to dismiss).

No=40&index=0&mode=details (last visited Jan. 13, 2025); and *State of Wisconsin v. Londale Quintae Strickling*, Milwaukee County Case No. 2015CF000138, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2015CF000138&county No=40&index=0&mode=details (last visited Jan. 13, 2025).

Plaintiff had "no weapon in his hand" at the time that he flagged down the officers. ECF No. 1 at 2. Claudio and/or Chovanec then approached Plaintiff with their hands on their service weapons. *Id.* Claudio, "in a hostile and authoritative tone of voice . . . then demanded Plaintiff surrender his gun to [the officers]." *Id.* It is not clear from the complaint where the gun was when Claudio demanded that Plaintiff surrender it.

When Claudio made this demand, Plaintiff "believed that he was neither free to leave nor decline Claudio's request." *Id.* Plaintiff surrendered his gun to the officers and got into Claudio's police car, and Claudio locked the police car door. *Id.* Plaintiff waited in the car while Claudio and Chovanec "radioed dispatch for a warrant check of Plaintiff." *Id.*

Roughly thirty minutes later, two additional officers—Burtch and Fraley—arrived on scene. *Id.* Plaintiff was removed from Claudio's police car to Fraley's police car. *Id.* The officers told Plaintiff that he was "not under arrest" and that they would "let [him] go once [the officers] c[ould] identify [him]." *Id.* Plaintiff states that Defendants did not have warrants to search or arrest him. *Id.* at 3. Later, Fraley moved Plaintiff back into Claudio's police car and locked him inside. *Id.* at 2.

Approximately forty-five minutes later, Plaintiff "was taken to Milwaukee County Jail" and booked into custody. *Id.* The State of Wisconsin then charged him with being a felon in possession of a firearm. *State of Wisconsin v. Londale Quintae Strickling*, Milwaukee County Circuit

Court Case No. 2023CF001349, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CF001349&county No=40&index=0&mode=details (last visited Jan. 13, 2025) (hereinafter the "2023 State Case"). Given this charge, the Court speculates that, while looking for outstanding warrants against Plaintiff, Defendants discovered that Plaintiff had a prior felony conviction.

Three days after booking, Plaintiff posted bail and was released. ECF No. 1 at 2. The state court dismissed the 2023 State Case against Plaintiff without prejudice on August 9, 2023 after the State's witness failed to appear. 2023 State Case.

Plaintiff states that both his gun and passport were taken during these events, and that neither his gun nor his passport have been returned to him. ECF No. 1 at 3.

## 4. ANALYSIS

### 4.1 Information to Be Considered on Motion to Dismiss

The Court begins by addressing a dispute between the parties as to what information may properly be considered on this motion to dismiss.[3]

First, Plaintiff challenges Defendants' citation to and reliance on several state criminal cases and records therefrom in which Plaintiff was

---

[3] Plaintiff also makes other various evidentiary objections, several of which are inapplicable. ECF No. 39 at 2–5. For example, he argues that Defendants' counsel lacks personal knowledge for the "statements" in her motion. *Id.* at 3. To the extent he is challenging Defendants' counsel's description of the allegations in his complaint, Defendants' counsel need not have personal knowledge of the assertions Plaintiff is making in his pleading to refer to them in the motion to dismiss. While a declaration or affidavit used in support of a motion must be made out on personal knowledge, the motion itself need not be. *See* Fed. R. Civ. P. 56(c)(4). To the extent Plaintiff is referring to Defendants' counsel's legal arguments, Defendants' counsel does not need to have personal knowledge for the legal assertions in her motion—only citations to appropriate authority.

convicted of various felony offenses. ECF No. 38 at 2–3. Defendants cite to those cases for the purpose of demonstrating that Plaintiff, under his previous legal name, was convicted of felony offenses such that he cannot legally carry a firearm. ECF No. 32 at 3.

Plaintiff argues that the Court cannot take judicial notice of these cases and the fact of his convictions therein. ECF No. 38 at 2–3. He is mistaken. As the Court earlier explained, *supra* note 2, the Court may properly take judicial notice of court records that are not subject to reasonable dispute—such as the fact of a conviction—on a motion to dismiss. *See, e.g., Peters v. Zhang*, 803 F. App'x 957, 958 (7th Cir. 2020) ("In support of their motion to dismiss, the defendants submitted records from [the plaintiff's] criminal prosecution. These public documents are an appropriate subject of judicial notice . . . and therefore the district court could consider them without converting the Rule 12 motion into a motion for summary judgment. (citing *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) and *Olson v. Champaign County*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015))); *Florance v. Barnett*, No. 23-1453, 2023 U.S. App. LEXIS 28382, at *4 (7th Cir. Oct. 25, 2023) ("The state court documents—which included the docket sheet, court orders, and a stipulated partial dismissal—were matters of public record and not subject to reasonable dispute, so the court could properly take notice of them." (citing Fed. R. Evid. 201(b) and *Olson v. Bemis Co.*, 800 F.3d 296, 305 (7th Cir. 2015))).

Plaintiff suggests that information derived from those state cases— for example, that he is a convicted felon—is hearsay and accordingly cannot be considered by the Court. ECF No. 39 at 3. Defendants reply that the state court records "are permissible under Rule 803(8), which excludes public records from the rule against hearsay." ECF No. 44 at 11.

Federal Rule of Evidence 803(8) provides that certain public records are permissible hearsay. More applicable would seem to be Rule 803(22), which explicitly applies to judgments of previous convictions. That rule states that evidence of a final judgment of conviction is permissible hearsay if

> (A) the judgment was entered after a trial or guilty plea, but not a nolo contendere plea; (B) the conviction was for a crime punishable by death or by imprisonment for more than a year [i.e., a felony]; (C) the evidence is admitted to prove any fact essential to the judgment; and (D) when offered by the prosecutor in a criminal case for a purpose other than impeachment, the judgment was against the defendant.

Fed. R. Evid. 803(22). Those conditions appear to be met here. In at least two of the prior state criminal cases to which Defendants point, Plaintiff was clearly adjudicated guilty of at least one felony after pleading guilty. *See State v. Strickling*, Milwaukee County Case No. 2015CF000138; *State v. Strickling*, Milwaukee County Case No. 2008CF002500.[4] The proof of conviction is not being offered by a prosecutor in a criminal case, so part (D) poses no barrier to the Court's consideration in this case of the felony convictions. With respect to part (C), the fact of Plaintiff's previous felony convictions is essential to this case because it serves as Defendants' purported basis for arresting him for illegally possessing a firearm. ECF No. 32 at 12–13; *id.* at 19 (arguing with respect to Plaintiff's due process claim that Defendant has no due process right for his firearm to be returned to him because he is a convicted felon who cannot legally have a gun); *id.* at 6

---

[4]The docket of Waukesha County Circuit Court Case No. 2002CF001187 does not allow the Court to determine whether Plaintiff was ultimately adjudicated guilty following a guilty plea. It lists the case disposition as "Guilty / No Contest."

(arguing with respect to Plaintiff's claim that the officers' seizure of his gun was unlawful that no such violation occurred because Plaintiff had no right to possess the gun in the first place). In light of the foregoing, the Court is satisfied that it may consider the fact that Plaintiff is a convicted felon.

Plaintiff's real objection is not that the Court cannot take judicial notice of those state cases, but rather that those cases should not factor into the analysis because Defendants did not know about them at the time of the initial encounter. ECF No. 38 at 3. The Court will address that argument, to the extent that it is relevant, in the specific context of Plaintiff's claims.

Lastly, Plaintiff argues that "a police report is not a proper subject for judicial notice." ECF No. 39 at 2 (citing *GE Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997)). But, as Defendants acknowledge on reply, Defendants do not cite to, rely on, or attach to their motion to dismiss any police reports or excerpts therefrom. ECF No. 44 at 6 ("Defendants have not sought to have any police reports judicially noticed." (footnote omitted)). The Court accordingly addresses this argument no further.

Defendants did, however, draw information from a state criminal complaint without making the complaint itself available to Plaintiff or the Court. ECF No. 32 at 9–10. They did not file that criminal complaint in this case until they filed their reply brief, two months after they moved to dismiss and filed their brief in support in which they referenced information from that complaint, and not until Plaintiff objected that Defendants had failed to make that document available to him. ECF No. 45-12; ECF No. 39 at 4. That was improper; it deprived both Plaintiff and the Court of the opportunity to ensure the veracity of Defendants' characterization of the statements in the criminal complaint, and it deprived Plaintiff of the opportunity to timely challenge or dispute them.

Case 2:24-cv-00018-JPS    Filed 01/13/25    Page 8 of 31    Document 47

If Defendants wanted the Court to take judicial notice specifically of that criminal complaint and other related state court documents, *see* ECF No. 45 and attachments, they should have made them available to both Plaintiff and the Court by attaching them to their initial moving papers, and by establishing the propriety of the Court judicially noticing them, in the first instance. *See Olson*, 784 F.3d at 1097 n. 1 (consideration of "the information and arrest warrant" was appropriate on motion to dismiss because the records were certified copies and they were filed "as exhibits supporting [the defendants'] motion to dismiss"); *see* ECF No. 44 at 5 n.1 (conceding that certain information cited in brief in support of motion to dismiss was "likely not accessible" to Plaintiff). Defendants later provided the criminal complaint and other related records in conjunction with their reply, but by then it was too late; Plaintiff had already filed his opposition to the motion to dismiss and so was deprived at least to some extent of his opportunity to make arguments relevant to those documents and to challenge Defendants' attempt to shoehorn them into consideration. The Court will accordingly decline to consider those documents, *see* ECF No. 45 and attachments thereto, at this stage to the extent that the information contained within them is not otherwise already publicly available.

### 4.2 Initial Fourth Amendment Seizure

Having addressed the parties' evidentiary arguments, the Court turns to Defendants' substantive arguments. The first claim on which Plaintiff was authorized by the Court to proceed is a claim that Chovanec and Claudio violated Plaintiff's Fourth Amendment rights during his initial detention when they put him in the locked police vehicle and made him surrender his weapon without a sufficient legal basis. ECF No. 6 at 13.

As an initial matter, Defendants appear to narrow the scope of this claim; they characterize it as a "Fourth Amendment claim involving the alleged seizure of [Plaintiff's] gun by . . . . Claudio." ECF No. 32 at 3; *id.* at 5 ("Plaintiff's Fourth Amendment rights were not violated by Officer Claudio's seizure of Plaintiff's gun following the shooting."). But the claim as recognized by the Court encompasses not only the seizure of Plaintiff's gun, but also the seizure of his person. *See* ECF No. 6 at 6–8. Plaintiff alleges that, in addition to demanding that he surrender his firearm to them, Claudio and Chovanec additionally restricted his freedom of movement by ordering that he sit in the back of the locked police car while Claudio and Chovanec "radioed dispatch for a warrant check." ECF No. 1 at 2. The Court, in screening Plaintiff's complaint, recognized that restriction of Plaintiff's movement separate and apart from his subsequent, formal arrest. *See* ECF No. 6 at 13–14 (identifying separately and independently the alleged seizure of Plaintiff's person and the alleged subsequent arrest); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology."). Yet Defendants, later in their briefing, appear to conflate the two situations or consider them one in the same. *See* ECF No. 32 at 12–13 (arguing generally that "Plaintiff's Fourth Amendment rights were not violated by his detention and subsequent arrest" and that "there were multiple grounds upon which to validly detain and arrest Plaintiff").

Defendants have limited their argument on this first claim to the propriety of the seizure of the firearm. They point to no authority demonstrating as a matter of law that the initial seizure of Plaintiff's person

by ordering that he sit in the back of the locked police car did not violate Plaintiff's Fourth Amendment rights.

The Court now turns to Defendants' arguments regarding the seizure of the gun. Defendants first argue that Chovanec and Claudio could not have violated Plaintiff's Fourth Amendment rights by ordering that he give up his gun because Plaintiff could not legally have a gun in the first place (notwithstanding that they did not know, at the time that they ordered the surrender of the gun, that Plaintiff could not legally have a gun). ECF No. 32 at 6 ("Plaintiff did not have a legally recognized right to possess a firearm, and so the Defendant officers did not violate any of his rights by seizing his gun."). Although the argument admittedly seems concordant with common sense, at least from a standing perspective, Defendants cite to no authority specifically supporting it. *Id.* (citing authority only in support of the assertion that Wisconsin's prohibition against the possession of firearms by felons has been upheld as constitutional). Given its lack of development and support, the Court will consider it no further. *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." (quoting *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000))).

Defendants next argue that the officers were entitled to take the gun as a matter of officer and/or public safety. ECF No. 32 at 6–7 ("[W]here police reasonably believe that their safety or the safety of the public may be threatened, exigent circumstances exist." (citing *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996))).

"[T]he police must, whenever practicable, obtain advance judicial approval of . . . seizures through the warrant procedure . . . ." *Terry*, 392 U.S. at 20 (citing *Katz v. United States*, 389 U.S. 347 (1967); *Beck v. Ohio*, 379 U.S. 89, 96 (1964); and *Chapman v. United States*, 365 U.S. 610 (1961)). Sometimes, however, officers objectively reasonably believe that there is "a compelling need to act quickly and that there [i]s no time to obtain a warrant." *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996) (citation omitted). "Exigent circumstances exist when there is a reasonable belief by police that their safety, or the safety of the public, may be threatened." *Id.* (citing *United States v. Hardy*, 52 F.3d 147, 149 (7th Cir.), *cert. denied*, 516 U.S. 877 (1995); *United States v. Ware*, 914 F.2d 997, 1001 (7th Cir. 1990); and *United States v. White*, 607 F.2d 203, 208 (7th Cir. 1979)). Courts "evaluate a claim of exigent circumstances from the perspective of the police officer at the scene." *Id.* "The existence of exigent circumstances is a mixed question of law and fact," the resolution of which is "fact-intensive." *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005)).

Defendants argue that "[t]he presence of a gun where a person could access it and potentially use it against officers or injure themselves or others with it has been held to be an exigent circumstance justifying warrantless seizure of a gun." ECF No. 32 at 7–8 (citing *United States v. Richmond*, 924 F.3d 404, 417 (7th Cir. 2019) and collecting cases). "[B]ecause Plaintiff told officers he'd just shot someone," Defendants argue, "it was reasonable for the officers to assume he had a gun and for the officers to seize that gun as a matter of officer safety and/or public safety . . . ." *Id.* at 8.

Plaintiff argues in opposition that this argument is "unsupported by the facts" alleged in his complaint and that the facts that he has alleged do not as a matter of law demonstrate exigent circumstances. ECF No. 38 at 4.

The Court agrees; while the situation very well may have presented exigent circumstances, the Court declines to make that determination as a matter of law at the 12(b)(6) stage. The issue of whether exigent circumstances are present relies on "factual determinations not appropriate for a motion to dismiss, but better suited for summary judgment." *Stevens v. City of Chicago*, No. 96 C 1358, 1996 U.S. Dist. LEXIS 12259, at *4 (N.D. Ill. Aug. 16, 1996)); *cf. McCrimmon v. Kane County*, 606 F. Supp. 216, 220 (N.D. Ill. 1985) ("Defendants have not even advanced an argument that the seizures were unreasonable. Indeed the reasonableness inquiry itself poses questions of fact irresolvable on a Rule 12(b)(6) motion.").

Defendants have not pointed to any authority suggesting that the facts as Plaintiff has alleged them demonstrate exigent circumstances *as a matter of law*. None of the cases to which Defendants cite in support of their exigent circumstances argument take place at the motion to dismiss stage. ECF No. 23 at 7–8 (citing *Richmond*, 924 F.3d 404 (exigent circumstances analysis undertaken in context of motion to suppress after the benefit of multiple evidentiary hearings); *New York v. Quarles*, 467 U.S. 649 (1984) (exigent circumstances analysis undertaken in context of motion to suppress after benefit of suppression hearing); *United States v. Huddleston*, 593 F.3d 596 (7th Cir. 2010) (same); *United States v. Hopewell*, 498 F. App'x 609 (7th Cir. 2012) (same); and *Kempf*, 400 F.3d 501 (same)). The courts in those cases addressed the exigent circumstances analysis not based solely on the pleadings, but instead with the benefit of factual development via evidentiary hearings. The Court has no such benefit here, at this stage.

Plaintiff alleges that at the time that he flagged down the officers to inform them that he had just shot at someone in defense of others and of himself, he did not have the weapon in his hand. ECF No. 1 at 1–2. It is not

clear where the weapon was, and the complaint does not clarify if the gun was, for example, still on his person or within his reach. *See* ECF No. 38 at 4 (brief in opposition to motion to dismiss clarifying that at the time that he flagged down police, Plaintiff "neither had any weapon on his person nor in his hand"); *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) ("[F]acts alleged in a brief in opposition to a motion to dismiss . . . as well as factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint." (collecting cases)). He also alleges that he immediately provided officers his name. ECF No. 1 at 1–2. Defendants have not directed the Court to any authority demonstrating as a matter of law that these circumstances were necessarily exigent. Moreover, Defendants' position asks the Court to assume that Plaintiff had the gun where he "could access it and potentially use it," ECF No. 32 at 7, a fact that has not been alleged or determined. For these reasons, resolution of the issue of whether exigent circumstances were present is better suited for a later stage of litigation.

Lastly, Defendants argue that the officers were entitled to seize the firearm because it was potentially evidence of a crime and was in plain view. ECF No. 32 at 8–9 ("Although Plaintiff claimed the shooting was in self-defense . . . , Officers were not required to accept that explanation at face value, and still had a duty to investigate and collect any items that could be evidence of a crime." (citing ECF No. 1 at 2 and *Terry*, 392 U.S. at 23)). Defendants additionally argue that "a threat of the imminent destruction of evidence provides exigent circumstances for seizure without a warrant." *Id.* at 8 (citing *United States v. Rucker*, 540 F. Supp. 3d 798, 802 (N.D. Ill. 2021)).

Again, this argument appears to be premised on a hypothetical factual scenario that is not necessarily borne out by the complaint. It is certainly true that "[e]xigent circumstances may include the probability that evidence will be destroyed before a valid search warrant can be obtained from a neutral magistrate." *Jacobs v. City of Chicago*, 215 F.3d 758, 769–70 (7th Cir. 2000) (citing *United States v. Marshall*, 157 F.3d 477, 481–82 (7th Cir. 1998)). But the complaint does not allow for the inference that the officers had any reason to believe that the gun would be "imminent[ly] destr[oyed]" such that they had to seize it right at that moment to protect its potential evidentiary value. ECF No. 32 at 8 (citing *Rucker*, 540 F. Supp. 3d at 802); *Jacobs*, 215 F.3d at 770 ("The allegations as pled in the plaintiffs' complaint give no indication that exigent circumstances existed in this case. There are as yet no facts on the record that would support a reasonable officer's conclusion that evidence of a crime was in imminent danger of being destroyed . . . ."). The fact that it was Plaintiff himself who alerted officers to the situation in the first place in fact belies that notion.

Nor does the complaint necessarily indicate that the gun was in plain view; Plaintiff alleges that it was no longer in his hand or on his person when he flagged down the officers, ECF Nos. 1 at 2 and 38 at 4, but the complaint does not elaborate as to where it in fact was—on the ground near him, in a bag or case, etc. The Court therefore cannot conclude at this stage that the officers were entitled to take it based on the plain view doctrine.

At bottom, the determination of whether the seizure was unreasonable or was, instead, supported by exigent circumstances or some other exception to the warrant requirement is not one easily resolved at this stage. The Court will accordingly deny Defendants' motion to dismiss this claim for failure to state a claim; Defendant's claim that Chovanec and

Claudio violated his Fourth Amendment rights during his initial detention when they put him in the locked police vehicle and made him surrender his weapon without a sufficient legal basis will proceed.

### 4.3    Unlawful Arrest

The second claim on which Plaintiff was authorized to proceed is a Fourth Amendment unlawful arrest claim. ECF No. 6 at 13.[5]

As pleaded in Plaintiff's complaint and as demonstrated by the 2023 State Case of which the Court has judicially taken notice, Plaintiff was, on the day in question, arrested for possession of a firearm as a felon after already having been detained in the back of the police car for some time. ECF No. 1 at 2; 2023 State Case. Plaintiff's complaint and the 2023 State Case allow the Court to infer that, when officers radioed dispatch to look up Plaintiff, they discovered that he had, under his previous name, been convicted of felony offenses. Plaintiff concedes in his complaint that he gave the officers his name and informed them that he had just shot at someone with a firearm. ECF No. 1 at 2.

"Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018) (quoting *Stokes v. Bd. of Educ. of City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010)). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge 'are

---

[5]Although Defendants' header asserts that "Plaintiff's arrest did not violate his Fourth Amendment right against unreasonable seizure," the section later asserts the same with respect to both his arrest and his pre-arrest detention in the back of the locked police vehicle. ECF No. 32 at 12–13. The Court identified these as separate claims in its screening order, ECF No. 6 at 13, but Defendants appear to conflate them. The Court's analysis in this section is limited to Plaintiff's claim that he was formally arrested without probable cause.

sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense.'" *Id.* at 908 (quoting *Stokes*, 599 F.3d at 622). Probable cause "requires only a probability or substantial chance or criminal activity, not an actual showing of such activity." *Id.* (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). "An arrest is constitutional if it is made with probable cause for an offense, even if the arresting officer's stated or subjective reason for the arrest was for a different offense." *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

"Generally, whether there is probable cause is a jury question, but 'when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them,' a court may decide the issue." *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000) (quoting *Booker v. Ward*, 94 F.3d 1052, 1058 (7th Cir. 1996)); *see also Marcure v. Lynn*, No. 18-CV-03137, 2024 U.S. Dist. LEXIS 79030, at *9 (C.D. Ill. Apr. 30 2024) (explaining that a plaintiff may "plead himself out of court" in a false arrest case by failing to establish an absence of probable cause in his pleadings (citing *Calderon v. Village of Bridgeview*, No. 18 C 8277, 2020 U.S. Dist. LEXIS 39782, at *2–3 (N.D. Ill. Mar. 9, 2020))). This is one such case.

Even drawing all reasonable inferences in Plaintiff's favor, the Court must conclude at this juncture that the officers had probable cause to arrest Plaintiff for possession of a firearm by a felon at the time that they did so. *See* WIS. STAT. § 941.29(1m)(a) ("A person who possesses a firearm is guilty of a Class G felony if . . . [t]he person has been convicted of a felony in this state."); *State v. Roundtree,* 952 N.W.2d 765, ¶ 159 (Wis. 2021) ("In this context, 'possess' . . . simply 'means that the defendant knowingly had actual physical control of a firearm.'" (quoting *State v. Black*, 624 N.W.2d 36,

¶ 19 (Wis. 2001))). The cases of which the Court has taken judicial notice, in conjunction with Plaintiff's own allegations, leave no room for doubt on that point. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law." (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006))).

Plaintiff first argues that the officers did not have probable cause to arrest him because they told him that they were detaining him for the purpose of identifying him, not because they believed he had committed a crime. ECF No. 38 at 3. But once they discovered who he was and were able to access his criminal record, the calculus changed.

The Court must also address the fact that Plaintiff allegedly told the officers that he acted in defense of himself and others. Under Wisconsin law, "a convicted felon's possession of a firearm may be privileged in some circumstances." *State v. Coleman*, 544 N.W.2d 912, 916 (Wis. Ct. App. 1996), *aff'd State v. Coleman*, 556 N.W.2d 701 (Wis. 1996) (citing *State v. Anderson*, 404 N.W.2d 100, 104 (Wis. Ct. App. 1987) and 1 THOMAS J. HAMMER AND ROBERT D. DONOHOO, SUBSTANTIVE CRIMINAL LAW IN WISCONSIN § 893, at 462 (1988)). Wisconsin courts have "impliedly recognized the viability of self-defense and defense of others as defense to § 941.29 [felon in possession of firearm] liability." *Id.* (quoting SUBSTANTIVE CRIMINAL LAW IN WISCONSIN § 893 at 462); *but see generally Roundtree*, 952 N.W.2d 765 (concluding that Wisconsin's statute prohibiting possession of firearms by felons was constitutional as applied to plaintiff notwithstanding the deprivation of the plaintiff's ability to bear arms for self-defense). The question, therefore, is whether the potential availability of that defense to Plaintiff—and Plaintiff's assertion of it at the time of his interaction with officers—

deprived the officers of probable cause to arrest Plaintiff for possession of a firearm as a felon.[6] The Court answers that question in the negative; notwithstanding Plaintiff's assertion to the officers of a privilege of self-defense and defense of others, the officers nevertheless had probable cause to arrest him for possession of a firearm as a felon.

"Generally, the 'existence of an affirmative defense to the underlying charge has no bearing on the probable cause analysis." *Brogsdale v. Torres-Corona*, No. 23 C 10105, 2024 U.S. Dist. LEXIS 108441, at *6 (N.D. Ill. June 19, 2024) (quoting *Beiles v. City of Chicago*, 987 F. Supp. 2d 830, 836 (N.D. Ill. 2013)). "Once a police officer discovers sufficient facts to establish probable cause, she has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence." *Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004) (citing *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995) and *Humphrey v. Staszak*, 148 F.3d 719, 724 (7th Cir. 1998)). "A police officer may not ignore conclusively established evidence of the existence of an affirmative defense, . . . but the officer has no duty to investigate the validity of any defense." *Id.* (first citing *Est. of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) and then citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)).

---

[6]Defendants assert that "a claim of self-defense does not prevent the State from pursuing criminal charges," but that is an incorrect framing of the issue. ECF No. 32 at 12. The question is not whether the State could pursue criminal charges, but instead whether the arresting officers in fact had probable cause to arrest at the time that they effectuated the arrest. Defendants fail to analyze what effect, if any, Plaintiff's assertion of the privilege of self-defense has on the probable cause analysis. Defendants do not even use the phrase "probable cause" in the section of their brief challenging Plaintiff's unlawful arrest claim.

The Seventh Circuit's opinion in *Hodgkins* provides helpful guidance. The court in that case addressed the issue of probable cause in the context of a First Amendment challenge to a state juvenile curfew law.

> [A] police officer who actually sees a sixteen-year-old leaving a late-night religious service or political rally could not properly arrest the youth for staying out past curfew. But . . . the statute's affirmative defenses do not compel the officer to look beyond what he already knows in order to decide whether one of the affirmative defenses applies. Thus, if a police officer stops a seventeen-year-old on the road at 1:00 a.m., and the teen informs the officer that she is returning home from a midnight political rally, the officer need not take the teen at her word nor attempt to ascertain whether she is telling the truth. Lacking first-hand knowledge that the juvenile has indeed been participating in [privileged activity], the officer is free to arrest her and leave assessment of the . . . affirmative defense for a judicial officer.

*Id.* (citing *Hodgkins v. Peterson*, 175 F. Supp. 2d 1132, 1148 (S.D. Ind. 2001), r*ev'd and remanded by Hodgkins*, 355 F.3d 1048). As demonstrated by *Hodgkins*, the officers in this case—not having themselves witnessed the alleged acts—were not obligated to take Plaintiff at his word that he possessed his firearm in defense of himself and others. Plaintiff's then-unverified claim that he acted in defense of himself and others was not "conclusively established evidence of the existence" of that defense. *Id.* (citations omitted). Plaintiff does not allege that there was any other evidence known to the officers at that time that would have supported his claim of self-defense and defense of others. Nor were the officers obligated, before arresting him for possession of a firearm as a felon, to investigate further to determine whether Plaintiff's claim of self-defense and defense of others was valid. Having been told by Plaintiff that he had just fired a

Case 2:24-cv-00018-JPS    Filed 01/13/25    Page 20 of 31    Document 47

gun and then having received notice of Plaintiff's status as a felon, the officers had all they needed to arrest him for violating § 941.29.

In light of all the foregoing, the Court will grant Defendants' motion to dismiss Plaintiff's unlawful arrest claim. *See Nichols v. Farrell*, No. 3:12-CV-804-JVB, 2013 U.S. Dist. LEXIS 57815, at *3 (N.D. Ind. Apr. 23, 2013) (dismissing Fourth Amendment claim at screening stage as barred by probable cause because police were told by witness that defendant possessed a gun and police upon checking "found [that] [the defendant] was a convicted felon"); *Brogsdale*, 2024 U.S. Dist. LEXIS 108441, at *6–7 ("Brogsdale has not alleged facts that would have required [the officers] to conclude that [he] [acted in self-defense]. . . . With his complaint instead admitting to laying his hands on [the alleged victim], Brogsdale has not sufficiently alleged that [the officers] lacked probable cause to arrest him for battery." (citing *Young v. Manna*, No. 21 C 5292, 2022 U.S. Dist. LEXIS 40563, at *3 (N.D. Ill. Mar. 8, 2022) and *Beiles*, 987 F. Supp. 2d at 837).

However, "[j]udges should ordinarily give a pro se plaintiff at least one opportunity to amend a complaint unless amendment would be futile." *Wade v. Barr*, 775 F. App'x 247, 248 (7th Cir. 2019) (citing *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) and *Gonzalez-Koeneke v. West*, 791 F.3d 9801, 807 (7th Cir. 2015)). The Court cannot necessarily conclude at this juncture that amendment as to this claim would be futile. Accordingly, the dismissal of this claim will operate without prejudice.

### 4.4    Excessive Force

The Court at screening also authorized Plaintiff to proceed on an excessive force claim. ECF No. 6 at 13. Plaintiff alleges that Claudio used a "hostile and authoritative tone of voice" with Plaintiff, that the officers "both had one of their hands on their gun[s]," that Claudio and Chovanec

treated him in a "rude, aggressive, and hostile manner," and that Plaintiff "suffered injuries to his person" as a result. ECF No. 1 at 2, 5. Defendants argue that the circumstances as alleged are "insufficient to support a claim of excessive force under the Fourth Amendment." ECF No. 32 at 14. The Court agrees.

"The [F]ourth [A]mendment applies to excessive force claims arising in the context of an arrest or investigatory stop[] and protects against the use of force that is not 'objectively reasonable.'" *Kiney v. Ind. Youth Ctr.*, 950 F.2d 462, 465 (7th Cir. 1991) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) and citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). The Fourth Amendment's prohibition against excessive force is not intended to "duplicate the tort of negligent infliction of emotional distress." *McNair v. Coffey*, 279 F.3d 463, 467 (7th Cir. 2002). "*Graham*, the Court's authoritative discussion of excessive force, repeatedly says or assumes that there cannot be *excessive* force without *some* force, referring variously to 'physically abusive governmental conduct,' . . . , 'physical force,' . . . , and force 'applied' to a suspect . . . ." *Id.* (citing *Graham*, 490 U.S. at 394, 391 n.5, and 392).

At most, Plaintiff has alleged discourteous and unfriendly treatment at the hands of Chovanec and Claudio. But "citizens do not have a constitutional right to courteous treatment by the police." *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (N.D. Ill. 1993). "Verbal harassment and abusive language, while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Id.* (citing *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) and *Blackmon v. DeRobertis*, No. 83 C 6879, 1989 U.S. Dist. LEXIS 3323 (N.D. Ill. Mar. 24, 1989)); *see also, e.g., Brownlee v. Schneider*, No. 18-CV-2156-JBM, 2018 U.S.

Dist. LEXIS 183038, at *4 (C.D. Ill. Oct. 25, 2018) ("Plaintiff also alleges that the . . . Officers engaged in excessive force by taunting him. The Defendants did not, however, apply any force at all to Plaintiff. Plaintiff's complaint is simply about verbal harassment which does not rise to the level of a constitutional violation." (citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000))); *Smith v. Augustine*, No. 07 C 81, 2009 U.S. Dist. LEXIS 14516, at *17 (N.D. Ill. Feb. 25, 2009) ("An officer screaming and yelling does not constitute excessive force because it does not involve physical force." (citing *McNair*, 279 F.3d at 467))).

The fact that the officers allegedly had their hands on their firearms, ECF No. 1 at 2, does not change the analysis. The Seventh Circuit has held that an officer does not engage in excessive force by "merely point[ing] a gun at a suspect in the course of arresting him," *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989) (citing *Hinojosa v. City of Terrell*, 834 F.2d 1223 (5th Cir. 1988)), so it is clear that merely putting one's hand on an undrawn firearm—an even lesser show of authority—does not give rise to a claim of excessive force. The Seventh Circuit has clarified that the allegation that an officer "kept [a] gun pointed at [an individual] for over ten minutes, even after ascertaining that [the individual] was not the person" that police were looking for, and during which time the individual "did nothing more threatening than provide the officer with his identification and ask . . . for permission to sit down" sufficed to state a claim for Fourth Amendment excessive force. *Jacobs*, 215 F.3d at 773–74. But again, what is alleged in this case is a far cry from that deemed sufficient to state a Fourth Amendment excessive force claim in *Jacobs*. Here, Plaintiff does not allege that the officers ever drew their firearms or made any move to do so; he alleges only that the officers had their hands on their firearms while they addressed him

in a verbally hostile manner. ECF No. 1 at 2. No caselaw that the Court has identified supports the conclusion that such a scenario states a Fourth Amendment excessive force claim.

While the Court allowed Plaintiff to proceed on an excessive force claim at the screening stage, it expressed skepticism as to whether such a claim could survive. ECF No. 6 at 11. And now, faced with a motion to dismiss, Plaintiff points to no authority suggesting that the facts as he has pleaded them can sustain an excessive force claim as a matter of law. He has alleged no physical contact or threat of physical contact by the officers, let alone any that could be deemed objectively unreasonable. *See Graham*, 490 U.S. at 397 ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstance confronting them . . . ." (citing *Scott v. United States*, 436 U.S. 128, 137–139 (1978) and *Terry*, 392 U.S. at 21)). And to the extent that he has alleged any injury, he has done so only in conclusory fashion. ECF No. 1 at 5 (baldly asserting that he "suffered injuries to his person"). His brief in opposition does nothing to rebut Defendants' argument that Plaintiff has failed to state a claim of excessive force as a matter of law.

Accordingly, and in light of all the foregoing, the Court will grant Defendants' motion to dismiss Plaintiff's excessive force claim for failure to state a claim. To do otherwise would be to allow what is essentially a negligent infliction of emotional distress claim to proceed as a constitutional violation, which the Seventh Circuit has explicitly cautioned district courts against doing. *McNair*, 279 F.3d at 467. The dismissal of this claim, however, will operate without prejudice, because the Court cannot conclude that Plaintiff necessarily could not alleviate the deficiencies

discussed herein by amending his complaint. *Wade*, 775 F. App'x at 248 (citations omitted).

### 4.5 Due Process

Defendants also move to dismiss Plaintiff's Fourteenth Amendment procedural due process claim. ECF No. 32 at 15. The Court on screening allowed Plaintiff to proceed on a claim that his procedural due process rights under the Fourteenth Amendment were violated when he "was deprived of his handgun and passport without due process of law." ECF No. 6 at 14; *see* ECF No. 1 at 1–2 (alleging that "thus far [Plaintiff] has neither received his gun nor his passport from Chovan[ec], Claudio, Burtch, [or] Fraley."). Defendants argue that this claim should be dismissed because, inter alia, "adequate state remedies are available to redress the deprivation," and Plaintiff "has not demonstrated that he availed himself" of those state remedies. ECF No. 32 at 16–17; *id.* at 19–20 (arguing further that Plaintiff is not entitled to the return of his firearm because of his status as a convicted felon). Plaintiff did not respond to these arguments in his opposition to the motion. ECF Nos. 38, 39 (omitting discussion related to his Fourteenth Amendment due process claim).

The Fourteenth Amendment forbids a state from depriving a person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017) (quoting *Manistee Apts., LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016)). "[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v.*

*Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (citing *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993) and *Khan v. Bland*, 630 F.3d 519 (7th Cir. 2010)).

Assuming arguendo that Plaintiff has a protected property interest in both his firearm and passport, his procedural due process claim is nevertheless subject to dismissal. A plaintiff fails to state a Fourteenth Amendment due process claim when he "had an adequate post-deprivation remedy available to him" in the state courts. *Morris v. Scott*, 840 F. App'x 14, 15 (7th Cir. 2021) (citing 704 ILCS 505/8(a) and *Turley v. Rednour*, 729 F.3d 645, 653–54 (7th Cir. 2013)); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[I]ntentional deprivations do not violate th[e] [Due Process] Clause provided, of course, that adequate state postdeprivation remedies are available."); *Mitchell v. Whiteleather*, 248 F.3d 1158, 2000 WL 1742526, at *1 (7th Cir. Nov. 20, 2000) ("[Plaintiff] cannot state a § 1983 claim that his property was taken without due process of law because he had an adequate remedy through Indiana tort law." (citing *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 383 (7th Cir. 1988))).

"The state of Wisconsin 'provides several post-deprivation procedures for challenging the taking of property.'" *Foster v. Tanem*, No. 21-CV-1244-PP, 2022 U.S. Dist. LEXIS 151850, at *10 (E.D. Wis. Aug. 24, 2022) (quoting *Cole v. Litscher*, 343 F. Supp. 2d 733, 742 (W.D. Wis. 2004) and citing *Washington v. Campbell*, No. 20-CV-990, 2021 U.S. Dist. LEXIS 101322, at *11 (E.D. Wis. May 28, 2021)). Plaintiff does not allege, nor contend in his opposition to the motion to dismiss, that those procedures were not available to him. Nor does he attempt to argue that any such procedures are inadequate. Accordingly, he fails to state a procedural due process claim under the Fourteenth Amendment. *Id.* ("Because those remedies were

and/or are available to him, the plaintiff cannot state a due process claim.").[7] The Court will accordingly grant Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process claim. The dismissal of this claim will operate without prejudice because the Court cannot conclude that Plaintiff necessarily could not alleviate the deficiencies discussed herein by amending his complaint. *Wade*, 775 F. App'x at 248 (citations omitted).

### 4.6 Failure to Intervene

Finally, the Court at screening authorized Plaintiff to proceed on a claim that "Defendants failed to intervene to stop one another's violations of Plaintiff's constitutional rights." ECF No. 6 at 14. Defendants seek dismissal of this claim on the ground that there were no violations of Plaintiff's constitutional rights. ECF No. 32 at 20–21. But because the Court has denied Defendants' motion to dismiss as to one of Plaintiff's constitutional claims, it will reject this argument. *See Peck v. Rigano*, 641 F. Supp. 3d 467, 473 (N.D. Ill. 2022) ("[B]ecause the Court concludes that Peck has adequately alleged a [constitutional] claim, the Court denies the [defendants'] motion to dismiss the claim for failure to intervene.").

### 5. CONCLUSION

The Court will lastly address Defendants' contention that the Court should dismiss the case against them because they are shielded by the doctrine of qualified immunity. ECF No. 32 at 21–24. The Court declines to dispose of Plaintiff's remaining claims on qualified immunity at this juncture. The qualified immunity inquiry is "necessarily 'fact-specific,'"

---

[7]Having disposed of Plaintiff's Fourteenth Amendment procedural due process claim on this basis, the Court does not reach Defendants' additional argument that the claim fails because "[n]one [o]f [t]he [n]amed Defendants [w]ere [a]uthorized [t]o [r]eturn Plaintiff's [g]un, [a]nd [n]one [w]ere [r]equired [t]o [r]eturn [h]is [p]assport." ECF No. 32 at 18.

and the specific facts surrounding Plaintiff's remaining claims are as of yet undeveloped. *Green v. Carlson*, 826 F.2d 647, 651 (7th Cir. 1987) ("[A] qualified immunity inquiry requires some examination of the facts of the case." (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987))). Because the Court does not yet know the specific factual contours of Plaintiff's interactions with Defendants on March 21, 2023, it would be premature to reach a conclusion as to qualified immunity at this juncture. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. . . . Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate . . . ." (quoting *Jacobs*, 215 F.3d at 765 n.3)).

For all of the reasons discussed herein, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's Fourteenth Amendment procedural due process claim, Fourth Amendment excessive force claim, and Fourth Amendment unlawful arrest claim are dismissed without prejudice. Plaintiff's Fourth Amendment claim that he and/or his gun were initially seized without sufficient legal basis, and his failure to intervene claim, will proceed.

Should Plaintiff wish to attempt to amend his complaint as to the claims subject to dismissal without prejudice—his excessive force, procedural due process, and unlawful arrest claims—he shall do so, if at all, by **February 3, 2025**. If Plaintiff chooses not to amend his complaint, or fails to do so on a timely basis, his action will proceed only as to his initial Fourth Amendment seizure claim and his failure to intervene claim, and the remainder of his claims will stand dismissed without prejudice.

The Court is enclosing a copy of its amended complaint form. Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and Defendants with notice of what Defendants allegedly did or did not do to violate his rights.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). In such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)). In other words, any amended complaint must include **all** of the allegations and claims (including those from the original complaint) that Plaintiff wishes to make, in a single filing without reference to other documents.

If an amended complaint is received, it will become the operative complaint in this action, and the Court may choose to screen it in accordance with 28 U.S.C. § 1915. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants . . . regardless of fee status.") (citing 28 U.S.C. § 1915(e)(2)(B)).

Accordingly,

**IT IS ORDERED** that Defendants Aileene Chovanec, Hector Claudio, Guy Fraley, and Kenton Burtch's motion to dismiss, ECF No. 31, be and the same is hereby **GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that Plaintiff Kabir Elohim Isreal's Fourth Amendment unlawful arrest claim be and the same is hereby **DISMISSED without prejudice**;

IT IS FURTHER ORDERED that Plaintiff Kabir Elohim Isreal's Fourth Amendment excessive force claim be and the same is hereby **DISMISSED without prejudice**;

IT IS FURTHER ORDERED that Plaintiff Kabir Elohim Isreal's Fourteenth Amendment procedural due process claim be and the same is hereby **DISMISSED without prejudice**;

IT IS FURTHER ORDERED that Plaintiff Kabir Elohim Isreal's motion for default judgment, ECF No. 25, be and the same is hereby **DENIED**;

IT IS FURTHER ORDERED that Plaintiff Kabir Elohim Isreal's motion for disposition date, ECF No. 46, be and the same is hereby **DENIED as moot**;

IT IS FURTHER ORDERED that Plaintiff Kabir Elohim Isreal shall file an amended complaint, if at all, on or before **February 3, 2025**; and

IT IS FURTHER ORDERED that the Clerk's Office mail Plaintiff a blank non-prisoner amended complaint form along with this Order.

Dated at Milwaukee, Wisconsin, this 13th day of January, 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.